IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NATIONAL TRUST INSURANCE COMPANY, | Civil Action File No.:      1:21-cv-03730-SDG |
| Plaintiff, | |
| v. | |
| KLEIN CONTRACTING CORP., JOSEPH P. TUCCINARDI, MICHELLE THOMPSON, and LAURA ROSENCRANTZ, | |
| Defendants. | |

## PLAINTIFF NATIONAL TRUST INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW, Plaintiff National Trust Insurance Company ("NTIC") in the above-styled action and hereby files its Brief in Support of its Motion for Partial Summary Judgment, respectively showing the Court as follows:

## I.     STATEMENT OF FACTS

### a.  Underlying Complaint and Relationship of the Parties:

This Declaratory Judgment Action stems from a motor vehicle collision between Defendant Joseph Tuccinardi ("Tuccinardi") and Defendant Michelle Thompson ("Thompson"). At the time of the collision, Tuccinardi was driving a

vehicle owned by Defendant Klein Contracting Corporation ("Klein"). Defendants Tuccinardi and Klein are in default in the case at bar.[1]

On or about August 1, 2020, Tuccinardi was an employee of Klein. [Deposition of Candace Klein, taken May 12, 2021, true and correct excerpts of which are attached to NTIC's Motion for Partial Summary Judgment as **Exhibit D** 17:16 - 22][2].  It was on that same date that Tuccinardi, while allegedly intoxicated, drove a 2020 Ford F150 pickup truck owned by his employer Klein, struck a vehicle driven by Thompson (the "Collision"). [Second Amended Complaint [Doc. 37] ¶ 10; Defendants Thompson and Rosencrantz's Answer [Doc. 43] ¶ 10; Defendants Klein Contracting and Tuccinardi's Default [Doc. 47]]. Thompson allegedly suffered injuries from the Collision, and she and her wife Laura Rosencrantz subsequently filed a personal injury action in the State Court of DeKalb County, Georgia against Klein and Tuccinardi. The suit was styled *Michelle Thompson and Laura Rosencrantz v. Klein Contracting Corp. and Joseph P. Tuccinardi*, Civil Action File No. 20A83659. (the "Underlying

---

[1]    Although not yet granted, Plaintiff NTIC filed its Motions for Default as to Defendant Klein and Defendant Tuccinardi on July 17, 2022. [Doc. 47]. Accordingly, pursuant to Fed. R. Civ. P. 56(a), this default operates as an admission of the well-pled facts alleged in Plaintiff NTIC's Second Amended Complaint.

[2]    Candace Klein's deposition on May 12, 2021 was taken during discovery for the Underlying Complaint. Defense counsel has agreed for its use in the present Declaratory Judgment action.

Complaint"). [a true and correct copy of which is attached to NTIC's Motion for Partial Summary Judgment as **Exhibit A**][3]. Klein was subsequently dismissed from the underlying action, presumably because Tuccinardi clearly was not in the course and scope of his employment at the time of the Collision. [Second Amended Complaint [Doc. 37]¶ 11; Defendants Thompson and Rosencrantz's Answer [Doc. 43] ¶ 11; Defendants Klein Contracting and Tuccinardi's Default[Doc. 47]].

**b. Insurance Policies at Issue:**

Plaintiff NTIC issued Commercial Auto Insurance Policy, Policy No. CA100003734-05, to Klein which contained Business Auto Coverage that was effective from July 1, 2020 through July 1, 2021 (the "Auto Policy"). The 2020 Ford F150 that Defendant Tuccinardi drove during the Collision was listed on the Schedule of Covered Autos under the Auto Policy by Endorsement 002, which was also effective from July 1, 2020 through July 1, 2021. ["Auto Policy" with Endorsement 002 – a certified copy of which is attached to NTIC's Motion for Partial Summary Judgment as **Exhibit E**].

---

[3]     As explained by the Eleventh Circuit in *Foremost Signature Ins., MI v. Silverboys, LLC*, the court may take judicial notice and thus properly incorporate the Underlying Complaint as a public record under Federal Rule of Evidence 201(b)(2). 793 F. App'x 962, 966 (11th Cir. 2019).

Plaintiff NTIC also issued a Commercial Umbrella Policy, Policy No. UMB100015111-04, to Klein with Liability Coverage effective from July 1, 2020 through July 1, 2021 (the "Umbrella Policy"). The Auto Policy is scheduled as underlying commercial automobile liability insurance for the Umbrella Policy (the Auto Policy and Umbrella Policy collectively referred to as the "NTIC Policies"). ["Umbrella Policy" – a certified copy of which is attached to NTIC's Motion for Partial Summary Judgment as **Exhibit F**].

### c. Tuccinardi's Employment with Klein

On the date of the Collision, August 1, 2020, Tuccinardi was an employee of Klein. [Klein Depo, 17:16 - 22].  Prior to and continuing through August 1, 2020, Klein provided Tuccinardi with a 2020 Ford F150 pickup truck from the company's fleet under the terms and conditions contained within Klein's Fleet Safety Policy. [Klein Depo, 32:15 - 23]. The relevant portion of the Fleet Safety Policy reads:

> Vehicles are provided primarily for use on organization business. However, certain reasonable use is permitted provided that prior approval from the Company President or CEO is obtained. In addition, . . . Drivers must comply with all applicable state laws and regulations.
> [Klein 32:15 - 23].

After the Collision, Klein terminated Tuccinardi's employment on August 25, 2020. [Second Amended Complaint [Doc. 37] ¶ 42; Defendants Klein Contracting

and Tuccinardi's Default [Doc. 47]]. Once Tuccinardi was no longer employed by Klein, he was no longer "insured" under the NTIC Policies issued to Klein. [**Exhibit B**; **Exhibit C**]. Since Tuccinardi was not an insured under the NTIC Policies, after August 25, 2020, Plaintiff NTIC has no coverage obligations for any damages arising out of Tuccinardi's actions occurring after his termination with Klein. [**Exhibit B**, *CA 00 01 10 13*, Section 11.A.; **Exhibit C**, *CU 00 01 04 13*, Section II.2.b.].

### d. Present Declaratory Judgment Action:

After Thompson and her wife Rosencrantz filed the Underlying Complaint against Tuccinardi and Klein, Plaintiff NTIC filed the present Declaratory Judgment action, seeking a declaration that it owes no duty to defend or indemnify Tuccinardi for the allegations in the Underlying Complaint because he does not qualify as an insured on the NTIC Policies issued to Klein. [*See generally* Second Amended Complaint [Doc. 37]]. More specifically, Plaintiff NTIC seeks a declaration that there is no coverage under the NTIC Policies issued to Klein because Tuccinardi did not have permission to drive Klein's Ford F150 pickup truck at the time of the Collision that gave rise to the Underlying Complaint. [Id. at ¶¶ 38-44].

Additionally, Plaintiff NTIC seeks a declaration that they owe no duties to indemnify or provide coverage for Tuccinardi for any allegations of punitive damages in the Underlying Complaint. Such is true if any award of these damages

stems from incidents that occurred after Tuccinardi's employment was terminated with Klein. After his termination from Klein, Tuccinardi was clearly not an insured under the NTIC Policies issued to Klein.

Plaintiff NTIC notes that there are additional issues in its Declaratory Judgment action related to Tuccinardi's cooperation under the NTIC Policies issued to Klein. Although the cooperation issue is not yet ripe for summary judgment, because the underlying action remains pending, it is NTIC's position that granting the present partial summary judgment motion would be sufficient to fully dispose of this action.

Plaintiff NTIC now brings the present motion and moves for partial summary judgment in the Declaratory Judgment action. At the time of the Collision, Tuccinardi was allegedly intoxicated after returning from a Saturday afternoon spent golfing and later drinking at the bar in a restaurant. In taking such actions, Tuccinardi exceeded the scope of permissive use granted by Klein for their vehicle. [Klein 49:19 - 76:10]. As such, Tuccinardi's trip was not a "permissive use" as required by the NTIC Policies to obtain coverage as an insured. Accordingly, NTIC seeks a declaration that it does not have a duty to defend or indemnify Tuccinardi under the NTIC Policies issued to Klein for damages allegedly related to the Collision. Further, because Tuccinardi was no longer an insured under the NTIC Policies following his

employment termination immediately after the Collision, Plaintiff NTIC has no duty to defend, indemnify, or provide any coverage for any damages that arise out of any subsequent actions by Tuccinardi.

## II.   <u>STANDARD OF REVIEW</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine only if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party meets its burden establishing that no genuine dispute exists as to a material fact by showing that no evidence supports an essential element of the nonmoving party's case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). A Court should view the evidence and all factual inferences in the light most favorable to the nonmoving party. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

The applicable substantive law determines which facts are material for purposes of summary judgment. *Anderson v. Radisson Hotel Corp.*, 834 F. Supp. 1364, 1367 (S.D. Ga. 1993). A federal court sitting in diversity must apply the substantive law of the state in which the court sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938);

*Baird v. Celis*, 41 F. Supp. 2d 1358, 1359 (N.D. Ga. 1999). Accordingly, Georgia substantive law and case law applies in this action.

### III.   ARGUMENT AND CITATION OF AUTHORITY

#### a. Introduction

Plaintiff NTIC is entitled to partial summary judgment in this Declaratory Judgment action and a declaration that there is no duty to defend or indemnify Tuccinardi in the Underlying Complaint and action because Tuccinardi does not qualify as an insured under the NTIC Policies issued to Klein since Tuccinardi exceeded the scope of his permissive use of the vehicle at issue at the time of the Collision.

On the date of the Collision, Tuccinardi was driving Klein's 2020 Ford F150 after an afternoon of golf. [Klein Depo, 49:19; 76:10]. This golf excursion was not a company event and was not sanctioned by Klein. [Id.]. On his way back from playing golf, Tuccinardi subsequently stopped to get dinner and drinks, and while leaving dinner, Tuccinardi was involved in the Collision. [Klein Depo, 54:4 - 19]. He was allegedly intoxicated at the time of the Collision. [Id.].

Tuccinardi's purpose behind this golf trip, dinner, and decision to drink was not for the benefit of his employer, Klein, and was not permitted by Klein's policies.

As such, Tuccinardi was not in the course and scope of his employment with Klein *and* exceeded the scope of permissive use granted by Klein for this vehicle as set forth in Klein's Fleet Safety Policy requiring drivers to comply with "all applicable state laws and regulations." [Klein Depo, 49:19; 76:10]. Because Tuccinardi's trip was not a "permissive use," Tuccinardi is not considered an "insured" under the NTIC Policies issued to Klein. [**Exhibit B**; **Exhibit C**].

Additionally, because Klein terminated Tuccinardi's employment on August 25, 2020—after the Collision—coverage for damages arising out Tuccinardi's acts post-termination are also not covered under the NTIC Policies issued to Klein. [Second Amended Complaint [Doc. 37] ¶ 42; Defendants Klein Contracting and Tuccinardi's Default [Doc. 47]].

> **b. Because Defendant Tuccinardi was returning from a golf outing and personal dinner while allegedly intoxicated when he was involved in the Collision, his trip is not a permissive use of the vehicle under the NTIC Policies.**

In determining whether an insurer owes its insured a duty to defend a particular lawsuit, Georgia law directs courts to compare the allegations of the complaint, as well as the facts supporting those allegations, against the provisions of the insurance contract. *Shafe v. American States Ins. Co.*, 288 Ga. App. 315 (2007). If the claims against the insured might potentially or arguably fall within the policy's coverage, the

insurer must provide a defense. *Colony Ins. Co. v. Corrosion Control, Inc.*, 390 F. Supp. 2d 1337, 1339 (M.D. Ga. 2005) (citing *Penn-America Ins. Co. v. Disabled Am. Veterans*, 268 Ga. 564 (1997)). However, "Georgia law does not permit an insurer to rely on the allegations of the complaint to deny coverage when the facts that the insurer knows or can ascertain show that the claim is within the coverage of the policy." *Elan Pharm. Research Corp. v. Employers Ins. of Wausau*, 144 F.3d 1372, 1377 (11th Cir. 1998). Georgia courts refer to these facts as "true facts." "'True facts' are distinct from the facts alleged in a complaint or other assertions of a third party, and instead true facts about the incident causing injury can trigger coverage even when the complaint shows no coverage under the policy." *Greater Cmty. Bancshares, Inc. v. Fed. Ins. Co.*, 2015 WL 10714014 at *5 (N.D.Ga., Apr. 1, 2015). Therefore, in determining whether there is a duty to defend Tuccinardi here, we have considered the allegations in the Underlying Complaint, the facts supporting those allegations, the provisions of the NTIC Policies, and only those "true facts" which would trigger coverage.

The Named Insured on both NTIC Policies is Klein. [**Exhibit B; Exhibit C**]. The Auto Policy defines "who is an insured" using language that is often referred to as a "permissive use" clause. The applicable permissive use clause in the Auto Policy can be found in Section II under subsection (A)(1)(b), which provides the following language regarding who is an insured under the policy:

**1. Who Is An Insured**

The following are "insureds":
. . .
**b.** Anyone else while using with your permission a covered

"auto" you own, hire or borrow. . . .

[**Exhibit B**, *CA 00 01 10 13*, Section II.A.1.].

Additionally, the Auto Policy provides the following definition of an "Insured":

**G.** "Insured" means any person or organization qualifying as an
insured in the Who Is An Insured provision of the applicable
coverage. …
[**Exhibit B**, *CA 00 01 10 13*, Section V.G.].

The Auto Policy explains that use of the words "you" and "your" throughout the policy

"refer to the Named Insured shown in the Declarations." [**Exhibit B**, *CA 00 01 10 13*,

Preface].

The Umbrella Policy provides an identical permissive use provision under

Section II, Subsection (2)(b). This permissive use provision provides that the Named

Insured and "[a]nyone else while using with your permission a 'covered auto' you

own, hire or borrow is also an insured." [**Exhibit C**, *CU 00 01 04 13*, Section II.2.b.].

Similar to the Auto Policy, the Umbrella Policy also explains that use of the words

"you" and "your" throughout the policy "refer to the Named Insured shown in the Declarations." [**Exhibit C**, *CU 00 01 04 13*, Preface].

These permissive use clauses are valid under Georgia law and eliminate coverage in situations where the Named Insured, Klein, has limited the scope of permission, through instructions, rules, or regulations, for a non-named driver to use a covered vehicle. *Mass. Bay Ins. Co. v. Wooten*, 215 Ga. App. 386 (1994). As explained by the Eleventh Circuit, "[f]or the purposes of insurance coverage, an individual using an automobile with the express permission of [a named] insured is a permissive user," and this permissive user "is generally covered under the named insured's insurance policy" in the event of an accident. *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017). Therefore, once the named insured grants permission, "whether liability coverage is provided to the [permitted user] hinges on whether the individual exceeded the scope of permission granted." *Id*.

The law in Georgia is clear that an employee driver exceeds his permission, and thus is not considered an insured, when that driver uses a company vehicle for uses expressly forbidden by that employer. *Mass. Bay Ins. Co. v. Wooten*, 215 Ga. App. 386 (1994).

The Georgia Supreme Court in 1968 established the "purpose test" for determining the scope of permissive use granted to an employee. *Strickland v. Georgia Cas. & Sur. Co.*, 224 Ga. 487, 492 (1968). As explained in that opinion, the relevant inquiry when examining whether an employee using a company vehicle for a permitted use is covered as an insured under a permissive use clause is "the purpose to be served" by the employee when using the vehicle. *Id*. Thus, under a permissive use provision, coverage is extended to the permitted employee driver only if the driver uses the vehicle for an "approved purpose." *Id.*; *Anderson*, 847 F.3d at 1334. We anticipate Defendant Thompson will argue that such is true, even if the manner in which the insured was driving is forbidden by the named insured.

However, any such argument must be rejected.  Twenty-nine years after *Strickland*, the Georgia Court of Appeals in *Barfield* found that an employer's internal rules, specifically company rules dictating the *manner* employees were required to operate company vehicles, could determine the scope of permissive use when examining a permissive use clause. *Barfield v. Royal Ins. Co. of Am.*, 228 Ga. App. 841, 843 (1997). The *Barfield* Court held that where an employee driver "uses a vehicle with permission, but violates the scope of the permission granted by engaging in activity the named insured has expressly forbidden"—specifically, drinking while driving— "the driver is not an 'insured' under the permissive use clause" of the

employer's insurance policy. *Id*. Thus, *Barfield* focused on the operation or the *manner* in which the employee drove the company vehicle and whether that manner of operation was forbidden by the employer.

The *Barfield* opinion has not been overruled and neither has *Strickland*, thus there is some conflicting authority on how to interpret permissive use clauses and whether the focus should be on *how the employee drove* or for *what purpose* the employee was using the vehicle. *Anderson*, 847 F.3d 1327 at 1333.  However, in the case at bar, it is clear that both the purpose and manner are forbidden and thus there is no permissive use.

As part of Tuccinardi's hiring process with Klein, Tuccinardi was given a copy of the company's Fleet Safety Policy which allows employees, in very limited circumstances, to use fleet vehicles for personal use. [Klein Depo, 32:15 - 23]. When granting permission to use these vehicles, Klein is clear that only certain reasonable personal uses of the vehicles are permitted provided that "prior approval from the Company President or CEO is obtained." [Id.]. Those uses include going to the grocery store, running personal errands, but not going to drink and not going to play golf. [Klein Depo, 53:14-16; 47:1-10] When driving a vehicle for the approved personal uses (such as the grocery store), Klein specifically states that to be within the scope of Klein's permission (i.e., to have approval from the Company President or CEO), employees

must also abide by all applicable Georgia laws, including all motor vehicle laws, such as not driving while intoxicated. [Id.]. Thus, Klein's policy specifically limits the purpose of vehicle use (personal use) to purposes approved by Klein's CEO or President. Klein's CEO or President only approves personal use when that use is for errands, and when that use is lawful. This approval requirement converts what might otherwise only be a restriction on the manner of driving (i.e., no driving under the influence) into a restriction on the purpose (personal use).

The 2020 Ford F150 that Tuccinardi was driving at the time of the Collision was one of Klein's fleet vehicles. [Second Amended Complaint [Doc. 37] ¶ 14; Defendants Thompson and Rosencrantz's Answer [Doc. 43] ¶ 14; Defendants Klein Contracting and Tuccinardi's Default [Doc. 47]]. However, despite being subject to the strict personal use restrictions laid out in the Fleet Safety Policy, there is no dispute that Tuccinardi took the vehicle without prior permission, went to play a round of golf, went out to dinner, and then allegedly proceeded to drive while intoxicated. [Klein Depo, 49:19; 76:10]. Taking the company vehicle to play a round of golf, going to a personal dinner, and, most significantly, driving while intoxicated is clearly not an approved purpose by Klein. Such use is not an errand, and even if it was, the permission to drive unlawfully intoxicated was not granted by Klein's President or CEO as was required by the Fleet Safety Policy. Therefore, regardless of whether this Court applies

the *Strickland* test (purpose) or the *Barfield* analysis (manner), or both, Tuccinardi exceeded the scope of permission granted to him by Klein for using this vehicle. He did not use the vehicle for an approved purpose (errand) when he went golfing, and he did not have permission for any personal use from the CEO or President when he violated Klein's policy against violating the law by driving while intoxicated. Therefore, Tuccinardi clearly exceeded the scope of permission granted by Klein at the time of the Collision, and subsequently cannot be found to be a covered "insured" under the NTIC Policies.

c. **Because Defendant Tuccinardi was no longer an insured under the NTIC Policies after his termination, Plaintiff NTIC does not have coverage obligations for any damages arising out of Tuccinardi's actions following the Collision.**

When Klein terminated Tuccinardi's employment on August 25, 2020—after the Collision—Tuccinardi immediately lost insured status under the NTIC Policies issued to Klein. [Second Amended Complaint [Doc. 37] ¶ 42; Defendants Thompson and Rosencrantz's Answer [Doc. 43] ¶ 42; Defendants Klein Contracting and Tuccinardi's Default [Doc. 47]]. Because Tuccinardi's insured status terminated in August of 2020, Plaintiff NTIC does not have any coverage obligations or duties to indemnify Tuccinardi for damages, such as punitive damages, that may arise out of any of his actions after his termination.

Plaintiff NTIC believes that Thompson and Rosencrantz will seek punitive damages against Tuccinardi in the Underlying Complaint and will use Tuccinardi's actions subsequent to the termination of his employment with Klein Contracting as evidence for their award. [*See* Defendant Michelle Thompson's Responses to Plaintiff NTIC's Interrogatories – attached to NTIC's Motion for Partial Summary Judgment as **Exhibit G**]; *See also*, *Moore v. Thompson*, 255 Ga. 236 (1985). While NTIC contends that Tuccinardi was not an insured for purposes of the underlying Collision since he was not a permissive user of the Klein vehicle, even if he were, NTIC is also seeking a declaration that if punitive damages are awarded based on Tuccinardi's post-termination actions, NTIC is not obligated to indemnify or provide coverage for those damages. NTIC cannot be made to insure damages for actions by a person after that person is clearly no longer an insured. Such would be the equivalent of requiring a personal auto carrier to insure damages caused by an accident that occurred after the auto carrier's policy terminated, simply because that person was an insured at one time.

## IV.   CONCLUSION

Plaintiff NTIC brought this Declaratory Judgment action seeking a declaration that it owes no duty to defend or indemnify Tuccinardi for the allegations and damages arising from the Collision in the Underlying Complaint. Given that

Tuccinardi was, without dispute, outside the parameters set forth in the Fleet Safety Policy at the time of the Collision such that he was without the permission of Klein, Tuccinardi is not a covered "insured" under the NTIC Policies issued to Klein.

Further, because Klein terminated Tuccinardi's employment with the company after the Collision, Tuccinardi was subsequently no longer an insured under the NTIC Policies. Thus, Plaintiff NTIC has no coverage or indemnity obligations for damages arising out of Tuccinardi's actions after the Collision. As such, Plaintiff NTIC respectfully requests this Court enter partial summary judgment in its favor and determine there is not a duty to defend or indemnify Tuccinardi in the Underlying Action.

This 31st day of August, 2022.

> Goodman McGuffey LLP
> Attorneys for National Trust Insurance Company
>
> By:    */s/ Stephanie F. Glickauf*
> STEPHANIE F. GLICKAUF
> GA State Bar No.  257540
> sglickauf@GM-LLP.com
> 3340 Peachtree Road NE, Suite 2100
> Atlanta, GA 30326-1084
> (404) 264-1500 Phone
> (404) 264-1737 Fax

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NATIONAL TRUST INSURANCE COMPANY, | |
| Plaintiff, | Civil Action File No.:     1:21-cv-03730-SDG |
| v. | |
| KLEIN CONTRACTING CORP., JOSEPH P. TUCCINARDI, MICHELLE THOMPSON, and LAURA ROSENCRANTZ, | |
| Defendants. | |

## RULE 7.1 CERTIFICATE OF COMPLIANCE

The foregoing document is double spaced in 14-point Times New Roman font and complies with the type-volume limitation set forth in Local Rule 5.1C.

*/s/ Stephanie F. Glickauf*
STEPHANIE F. GLICKAUF
GA State Bar No.  257540
sglickauf@GM-LLP.com
3340 Peachtree Road NE, Suite 2100
Atlanta, GA 30326-1084
(404) 264-1500 Phone
(404) 264-1737 Fax
Email: sglickauf @GM-LLP.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NATIONAL TRUST INSURANCE COMPANY, | |
| Plaintiff, | Civil Action File No.:   1:21-cv-03730-SDG |
| v. | |
| KLEIN CONTRACTING CORP., JOSEPH P. TUCCINARDI, MICHELLE THOMPSON, and LAURA ROSENCRANTZ, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

This is to certify that I electronically filed this **Brief in Support of Plaintiff's**

**Motion for Partial Summary Judgment** using the CM/ECF system which will

automatically send e-mail notification of such filing to:

Briant G. Mildenhall, Esq.
Fried Goldberg LLC
3550 Lenox Road, NE, Suite 1500
Atlanta, GA 30326-4302
bmildenhall@friedgoldberg.com

This 31st day of August, 2022.

/s/ Stephanie F. Glickauf
STEPHANIE F. GLICKAUF
GA State Bar No.  257540
sglickauf@GM-LLP.com
Goodman McGuffey LLP
3340 Peachtree Road NE, Suite 2100
Atlanta, GA 30326-1084
(404) 264-1500 Phone, (404) 264-1737 Fax